THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIA BARRAGAN, and ANGEL | § | No. SA-15-CV-854-DAE |
| ALVAREZ, as next friend of A.A., JR., | § | |
| A.A, and A.A, | § | |
| | § | |
| Plaintiffs, | § | |
| vs. | § | |
| | § | |
| GENERAL MOTORS LLC, U-HAUL | § | |
| INTERNATIONAL, INC., and | § | |
| KELTON'S INC., | § | |
| | § | |
| Defendants. | § | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART GENERAL
MOTORS' MOTION TO DISMISS; AND (2) GRANTING IN PART AND
DENYING IN PART U-HAUL INTERNATIONAL'S MOTION TO DISMISS

Before the Court is a Motion to Dismiss Plaintiffs' Third Amended

Complaint filed by Defendant General Motors LLC ("GM") (Dkt. # 70), and a

Motion to Dismiss Plaintiffs' Third Amended Complaint filed by Defendant U-

Haul International, Inc. ("U-Haul") (Dkt. # 71). The Court held a hearing on the

motions on June 22, 2016. At the hearing, Robert P. Woodliff, Esq., represented

Plaintiffs Maria Barragan ("Barragan") and Angel Alvarez ("Alvarez"), as next

friend to the minor children of the decedent (collectively, "Plaintiffs"); David

Prichard, Esq., and David R. Montpas, Esq., represented GM; Haley A. Cox, Esq.,

and J. Banks Sewell, III, Esq., represented U-Haul and Defendant Kelton's Inc.

1

("Kelton's").[1]  After careful consideration of the supporting and opposing

memoranda and the arguments presented at the hearing, the Court, for the reasons

that follow, **GRANTS IN PART AND DENIES IN PART** GM's Motion to

Dismiss (Dkt. # 70), and **GRANTS IN PART AND DENIES IN PART** U-Haul's

Motion to Dismiss (Dkt. # 71).

<u>BACKGROUND</u>

On August 27, 2012, Isabel Barragan Mendoza ("Mendoza") was

driving a 2004 GMC Envoy (the "vehicle") with an attached U-Haul trailer on

Interstate 10; her brother, Juan Barragan, was a rear seat passenger.  ("3d Am.

Compl.," Dkt. # 69 ¶¶ 15–16.)  According to Plaintiffs, Mendoza lost control of the

vehicle while attempting to make a lane change; the vehicle struck a guardrail and

rolled.  (<u>Id.</u> ¶ 17.)  Mendoza and her brother were both killed in the accident.  (<u>Id.</u>)

According to Plaintiffs, Mendoza died from injuries sustained after the roof of the

vehicle crushed in upon her; her brother was ejected from the vehicle and died

from injuries sustained in the collision.  (<u>Id.</u>)

On August 27, 2014, Plaintiffs filed suit in the 205th District Court of

Culbertson County, Texas against GM, U-Haul, and AMERCO.  (Dkt. # 1-5, Ex.

A-2.)  On December 22, 2014, GM, U-Haul, and AMERCO removed the action to

---

[1] Kelton's was served on April 11, 2016 (Dkt. # 88) and filed an answer on May
17, 2016 (Dkt. # 89).  Kelton's has not yet filed a motion to dismiss, but appeared
at the hearing.

this Court, invoking the Court's diversity jurisdiction.  (Dkt. # 1.)  On January 13, 2015, Plaintiffs filed a Second Amended Complaint.  (Dkt. # 11.)  On September 29, 2015, the Court held a hearing on various motions to dismiss.  (Dkt. # 64.)  At the hearing, the parties represented that Plaintiffs agreed to dismiss their claims against AMERCO; this was memorialized in the Court's September 30, 2015 Order.  (Dkt. # 63 at 31.)  After the hearing, the Court issued an order dismissing without prejudice the following claims against GM: (1) design defect (id. at 10–12); (2) marketing defect (id. at 12–15); and (3) breach of express warranty (id. at 20–21).  The Court's order dismissed without prejudice the following claims against U-Haul: (1) strict liability for design defect (id. at 25–26); and (2) gross negligence (id. at 27–28).  Finally, the Court's order dismissed with prejudice Plaintiffs' claim against U-Haul for breach of express warranty.  (Id. at 30–31.)

The following claims against GM survived the previous motion to dismiss: (1) manufacturing defect (Dkt. # 63 at 6–10); (2) negligence (id. at 15–16); and (3) breach of implied warranty of merchantability (id. at 16–20).  The following claims against U-Haul survived the previous motion to dismiss: (1) manufacturing defect (id. at 22–25); (2) negligent design defect (id. at 26–27); and (3) breach of implied warranty of merchantability (id. at 29–30).

On January 31, 2016, Plaintiffs, filed a third amended complaint, adding Kelton's, the entity that rented the trailer to Mendoza, as a Defendant.

3

(Third Am. Compl.)  The third amended complaint re-alleges many of the claims that survived the previous motion to dismiss; against GM, it raises claims for (1) manufacturing defect (id. ¶¶ 38–44); (2) negligence (id. ¶¶ 56–57); and (3) breach of implied warranty of merchantability (id. ¶¶ 58–60).  The third amended complaint also re-pleads various claims that were previously dismissed without prejudice; against GM, Plaintiffs re-plead various design defect claims (id. ¶¶ 23–37), and various marketing defect claims (id. ¶¶ 45–55).  Against U-Haul, the Third Amended Complaint re-pleads the following claims which previously survived the motion to dismiss: (1) negligent design defect (id.  ¶ 75(A) & (G)); and (2) breach of implied warranty of merchantability (id. ¶ 76), adds an additional claim for marketing defect (id. ¶¶ 67–74; 75(D)–(F)), and re-pleads the claim for breach of express warranty of merchantability which was previously dismissed with prejudice (id. ¶ 76).

On February 16, 2016, GM filed the instant Motion to Dismiss (Dkt. # 70).  On March 15, 2016, Plaintiffs filed a Response (Dkt. # 79), and GM filed a Reply on April 5, 2016 (Dkt. # 83).  U-Haul also filed the instant Motion to Dismiss on February 16, 2016 (Dkt. # 71).  Plaintiffs filed a Response, again attaching a Fourth Amended Complaint, on March 21, 2016 (Dkt. # 82).  U-Haul filed its reply on April 5, 2016 (Dkt. # 84).

4

LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accept[s] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

ANALYSIS

I.  GM's Motion to Dismiss

GM argues that each of Plaintiffs' twenty-one design defect claims fail to state a claim on which relief can be granted, and should be dismissed.  (Dkt.

# 70 at 6–10.)  GM also argues that Plaintiffs have failed to state a claim for

marketing defect, because Plaintiffs' claims for marketing defect are premised on a

failure to warn of other product defects.  (Id. at 10–13.)

## A. Design Defect Claims

Plaintiffs' Third Amended Complaint alleges that GM is liable for

defective design of twenty-one elements of the 2004 GMC Envoy.[2]  (Third Am.

Compl. ¶ 22, 24(a)–(c), 25(c), & 27.)  GM moves to dismiss each of these design

defect claims pursuant to Rule 12(b)(6).  (Dkt. # 70 at 6–10.)

To succeed on a design defect claim, a plaintiff must show that

"(1) the product was defectively designed so as to render it unreasonably

dangerous; (2) a safer alternative design existed; and (3) the defect was a

producing cause of the injury for which plaintiff seeks recovery."  Timpte Indus.,

Inc. v. Gish, 286 S.W.3d 306, 311 (Tex. 2009); Tex. Civ. Prac. & Rem. Code

---

[2] Specifically, Plaintiffs allege that the following defective elements: (1) defective
rollover prevention; (2) unreasonably high center of gravity; (3) unreasonable
instability; (4) unreasonably unstable roof; (5) unreasonable roof crush propensity;
(6) seat buckles; (7) seat belts; (8) shoulder belts; (9) belt retractors; (10) lack of
pre-tensioner; (11) "'A', 'B', 'C' and 'D' pillars;" (12) windshield headers;
(13) roof rails; (14) glass and window system; (15) window frame design;
(16) door latches; (17) doors; (18) seats; (19) seatbacks; (20) seatback-related
systems; and (21) lack of side curtain airbags.  (Third Am. Compl. ¶ 22, 24(a)–(c),
25(c), & 27.)

§ 82.005(a).  In order to successfully plead the existence of a "safer alternative design," a Plaintiff must allege the existence of:

> a product design other than the one actually used that in reasonable probability (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Tex. Civ. Prac. & Rem. Code § 82.005(b); Hernandez v. Tokai Corp., 2 S.W.3d 251, 256–57 (Tex. 1999).  Even at the motion to dismiss stage, "a safer alternative design is a necessary component to a design defect claim."  Rodriguez v. Gilead Sciences, Inc., No. 2:14–CV–324, 2015 WL 236621, at *3 (S.D. Tex. Jan. 16, 2015); see Hernandez, 2 S.W.3d at 256 ("Section 82.005 reflects the trend in our common-law jurisprudence of elevating the availability of a safer alternative design from a factor to be considered in the risk-utility analysis to a requisite element of a cause of action for defective design.").  "[C]onclusory allegations . . . none of which relate to a safer alternative design," or which only "address global dangerousness, poor quality, or marketing issues" will not suffice.  Rodriguez, 2015 WL 236621, at *3.

    1.  Design Defect Claims Regarding Rollover Prevention

Plaintiff alleges five design defects relating to the 2004 GMC Envoy's propensity to roll over: (1) defective rollover prevention; (2) unreasonably high

center of gravity; (3) unreasonable instability; (4) unreasonably unstable roof;

(5) unreasonable roof crush propensity.  (Third Am. Compl. ¶ 22.)  With regard to

each of these alleged defects, Plaintiffs entirely fail to plead the existence of a safer

alternative design.  (See id.); Hernandez, 2 S.W.3d at 256.  Accordingly, Plaintiffs

fail to state a claim upon which relief can be granted as to each of these design

defects, and they are **DISMISSED**.

       2.  Design Defect Claims Regarding the Restraint System

       Plaintiffs allege five design defects relating to the 2004 GMC Envoy's

restraint system: (1) seat buckles; (2) seat belts; (3) shoulder belts; (4) belt

retractors; and (5) lack of pre-tensioner.  (Third Am. Compl. ¶ 24(a).)  Plaintiffs

state that these defects rendered the vehicle unreasonably dangerous, because the

vehicle had a "propensity to go out of control and rollover," and the vehicle's

restraint system was unable to "restrain an occupant" in those circumstances.  (Id.

¶ 34.)  While thin, Plaintiffs' allegations sufficiently plead that the restraint system

was defectively designed, rendering it unreasonably dangerous.  Accordingly,

Plaintiffs have satisfied the first element of a design defect claim.

       With regards to the existence of a safer alternative design, Plaintiffs

include a laundry list of alternative designs for restraint mechanisms:

> Reasonable alternative designs should include: rollover pretensioners
> to eliminate dangerous amounts of belt slack in a roll; rollover sensors
> to activate safety devices such as pretensioners when the vehicle
> begins to roll; emergency locking retractors to prevent belt "spool

out"; lap belt anchorage point adjustment to effectively keep a person in the seat during rollover, buckle belt locks to prevent inertial unlatching and integration of safety belts into the seat to transfer energy away from the occupants; four-point safety belts; tightened D-ring shoulder belt adjuster to reduce occupant movement during rollover; cinching safety belt latch plates to reduce occupant movement upwards; and inflatable safety belts to improve belt performance in rollover.

(Third Am. Compl. ¶ 37.)  However, Plaintiffs fail to allege that any of these alternative designs would prevent or significantly reduce the risk of death without substantially impairing the product's utility.  Tex. Civ. Prac. & Rem. Code § 82.005(b)(1).  Plaintiffs similarly fail to allege that any of these alternative designs was economically or technologically feasible at the time the product left the control of the manufacturer, or even that these alternative designs existed at the time of manufacture.  Id. at § 82.005(b)(2).  Cf. Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc., 770 F.3d 322, 330–36 (5th Cir. 2014).  Here, Plaintiffs make only the conclusory allegations that "[r]esearch has shown for many years that standard safety belt systems failed to effectively restrain occupant's motion in rollover crashes" and that "effective safety belt systems" are necessary to protect passengers in rollover crashes.  (Third Am. Compl. ¶ 35.)

The Court carefully explained the pleading standard for design defect in its September 2015 order.  (Dkt. # 63 at 10–12.)  Nevertheless, Plaintiffs fail to plead with any specificity the actual existence of a safer alternative design with regard to the restraint system.  See Hernandez, 2 S.W.3d at 256.  Accordingly,

9

Plaintiffs' design defect claims with regard to effective restraint systems are **DISMISSED**.

      3.  <u>Design Defect Claims Regarding Crush Protection</u>

              Plaintiffs allege that the "'A', 'B', 'C' and 'D' pillars," windshield headers, and roof rails suffered from design defects, because each was "fabricated without sufficient strength and structural integrity to withstand roof crushing forces without imparting injury-producing forces upon vehicle occupants during foreseeable accident rollovers of such vehicles."  (Third Am. Compl. ¶ 24(b).)  Construing these allegations in the light most favorable to the Plaintiff, the Court infers that the pillars, windshield headers, and roof rails were not made of sufficiently strong material to support the passenger compartment during a rollover accident, and caused the vehicle to be unreasonably dangerous to the passengers in such a scenario.  Accordingly, the Plaintiffs have sufficiently pled the first element of a design defect claim.

              With regard to the existence of a safer alternative design, Plaintiffs allege only that GM should have used "complete sections, thicker steel and stronger materials" when designing the crush-protective elements of the car.  (Third Am. Compl. ¶ 33.)  Plaintiffs state that these improvements were "mechanically feasible, posed no adverse consequences to consumer and [were] only marginally more expensive to implement," and that these improvements

would allow the vehicle to "withstand rollover impact forces . . . in excess of 8,000 Newtons and thus would prevent death in most actual rollover accident cases." (Id.)

However, while Plaintiffs allege that this design alternative would reduce the risk of crush-related deaths in a rollover accident, they fail to plead the existence of a "safer alternative design" in accordance with the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code § 82.005(b)(1). While Plaintiffs allege that GM should have used stronger materials in the roof, they do not plead that the use of stronger materials would have reduced the risk of the injury "without substantially impairing the product's utility," nor do they allege that the use of stronger materials was economically and technologically feasible at the time the product left GM's control. Id.; (Dkt. # 63 at 10–12.) Rather, they make the conclusory allegation that the alternative was "mechanically feasible" and only "marginally more expensive to implement."[3]  These allegations, over 18 months into the litigation are insufficient for the Court to infer that an

_____

[3] Plaintiffs do not allege that the vehicle, as designed, did not meet certain standards for crush protection, nor do they allege that the vehicle as designed could not withstand a crush force of 8,000 Newtons.  Rather, they state that GM has known since 1968 that these elements "must be manufactured and fabricated to withstand rollover crushing forces of at least 8,000 Newtons," and that "the crush impact forces sustained in real world accidents" were greater than the forces the vehicle could sustain.  (Third Am. Compl. ¶¶ 31–32.)

economically feasible alternative design existed at the time of the vehicle's manufacture.  Id. § 82.005(b)(2).

Accordingly, Plaintiffs have failed to plead the existence of a safer alternative design with regard to the crush protection system, and fail to state a claim upon which relief can be granted.  Plaintiffs' design defect claims with regard to effective crush protection systems are **DISMISSED**.

4.  Design Defect Claims Regarding Ejection Protection

Plaintiffs allege that the vehicle's glass and window system and window frame design (the "window system") suffered from design defects.  (Third Am. Compl. ¶ 24(c).)  Plaintiffs state that the window system in the vehicle did not comply with Federal Motor Vehicle Safety Standard 205, did not mitigate injuries resulting from impact to the windows, and failed to prevent occupants from being thrown through the vehicle windows in a collision.  (Id.)  Plaintiffs state these failures rendered the vehicle unreasonably dangerous, and that Juan Barragan may have been thrown through the vehicle's window during the crash.  At this stage, this allegation is sufficient to allege that the window system was defectively designed, and that this defect rendered the design unreasonably dangerous.

Plaintiffs state that the National Highway Traffic Safety Administration ("NHTSA") published a report in August 2001 presenting four prototype window systems, each of which improved occupant retention "by

12

reducing ejections through side windows in rollover crashes."[4]  (Dkt. # 69 ¶ 30.)
According to the Third Amended Complaint, implementing one of the four
prototypes increased production costs between forty-eight and seventy-eight
dollars per vehicle.  (Id.)  Construing the complaint in the light most favorable to
the Plaintiff, this proposed alternative design could have reduced the risk of
Plaintiffs' injuries, and may have been economically and technologically feasible
at the time the vehicle was manufactured.  Tex. Civ. Pract. & Rem. Code
§ 85.002(a).  Accordingly, Plaintiffs allege sufficient information regarding the
window system to plausibly state a safer alternative design existed at the time the
vehicle was manufactured.  The second factor of the defective design test is
accordingly satisfied.  See Gish, 286, S.W.3d at 311.

Finally, the Court infers from the Third Amended Complaint that the
alleged defect could have been a producing cause of the injury for which Plaintiff
seeks recovery.  Gish, 286 S.W.3d at 311.  Plaintiffs allege that Juan Barragan was

---

[4] Plaintiffs filed a 1995 Status Report published by the NHTSA entitled "Ejection
Mitigation Using Advanced Glazing" as an exhibit to their Response.  (Dkt. # 79,
Ex. 2.)  Defendants object to Plaintiffs' inclusion of the 1995 Status Report rather
than the official 2001 report.  (Dkt. # 83 at 4.)  While this discrepancy is
inexplicable, the Court has reviewed the 1995 report and finds that it presents a
design involving both the material makeup of the window and the frame in which
it is enclosed, and that the design purports to reduce the frequency with which
passengers are ejected from windows in car accidents.  (See Dkt. # 79, Ex. 2.)
While this design may not ultimately be sufficient to support a design defect claim,
it presents sufficient information regarding the existence of an alternative design to
survive the motion to dismiss stage.

thrown from the vehicle during the accident and subsequently died; while he may

have been ejected through the door, it is possible that he was ejected through the

window.  At this stage, Plaintiffs have sufficiently pled that the defect was a

producing cause of their injury.  See id.  Accordingly, Plaintiffs have stated

sufficient facts to allege that the window system suffered from a design defect.

GM's Motion to Dismiss this design defect is **DENIED**.

> 5.  Design Defect Claims Regarding Ejection Protection from Doors

Plaintiffs allege that both the door, and door latch system, suffered

from a design defect.  (Third Am. Compl. ¶ 24(c).)  Plaintiffs state that the door

latch system was defective and allowed occupants to be ejected during a rollover.

(Id.)  The Court infers that the Plaintiffs allege the vehicles doors and door latches

were defectively designed, causing the doors to open upon impact, and causing the

vehicle to be unreasonably dangerous to passengers who could be ejected from the

vehicle.  Plaintiffs have sufficiently pled the first element of a design defect claim.

Gish, 286 S.W.3d at 311.

With regards to the second element Plaintiffs must plead to state a

design defect claim, Plaintiffs assert that GM was aware of the possibility of door

latch failure, and had "knowledge and technology to strengthen the overall

occupant retention system" at minimal cost.  (Third Am. Compl. ¶ 24(c).  This is

exceedingly broad, and does not plead with any degree of specificity the existence

of a safer alternative design with regard to the doors or door latches.  Plaintiffs fail to state a design defect claim with regard to the doors or door latches, and these claims are **DISMISSED**.

      6.   <u>Design Defect Claims Regarding Seating</u>

      Plaintiffs allege that the seats, seatbacks, and seatback-related systems suffered from design defects, and the lack of side curtain airbags amounted to a design defect.  (Third Am. Compl. ¶ 27.)  Plaintiffs do not allege the existence of a specific defect with regard to any of these elements, but only state that these defects prevented the car from providing adequate protection to the driver and contributed to the ejection of the passenger.  (<u>Id.</u>)  Even assuming that the Plaintiffs sufficiently pled any defect with regards to the seats and airbags, they do not allege the existence of a safer alternative design.  <u>Gish</u>, 286 S.W.3d at 311.  Rather, they merely state that "alternative designs to correct dangerous propensities of the GMC Envoy were known to Defendant for many years.  Defendant intentionally chose profits over safety."  (<u>Id.</u> ¶ 28.)  Plaintiffs wholly fail to state a claim upon which relief can be granted with regard to the design defect claims for seats, seatbacks, seatback-related systems, and the lack of side curtain airbags.  Accordingly, these claims are **DISMISSED**.

B.  Marketing Defect Claims

Plaintiffs' Third Amended Complaint alleges that the vehicle suffered from various marketing defects.  (Third Am. Compl. ¶¶ 46–55.)

"[A] manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product."  Am. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 426 (Tex. 1997).  A product may be unreasonably dangerous if a manufacturer fails "to provide adequate warnings or instructions on the product's use," and the "lack of adequate warnings or instructions renders an otherwise adequate project unreasonably dangerous."  McLennan v. Am. Eurocopter Corp., Inc., 245 F.3d 403, 426–27 (5th Cir. 2001) (quoting Coleman v. Cintas Sales Corp., 40 S.W.3d 433, 549–50 (Tex. App. 2001)).  A plaintiff seeking to bring a marketing defect claim must allege the following elements:

> (1) a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product, (2) the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed, (3) the product possessed a marketing defect, (4) the absence of the warning or instructions rendered the product unreasonably dangerous to the ultimate user or consumer of the product, and (5) the failure to warn or instruct constituted a causative nexus in the product user's injury.

DeGrate v. Executive Imprints, Inc., 261 S.W.3d 402, 411 (Tex. App. 2008).

1. <u>General Marketing Defect Claims</u>

Plaintiffs' Third Amended Complaint alleges that GM is liable for marketing defects for failure to warn consumers about:

> Defective rollover prevention, unreasonably high center of gravity, unreasonable instability, unreasonably instable roof and roof crush propensity, defective restraint and supplemental restraint systems, including air bags and safety belts, defective seats and seatbacks, defective doors and door latches, which allowed doors to open during the rollover and an overall occupant retention system, which included a failure to utilize an occupant retention window system[ ] in the side and rear windows of the subject vehicle . . .

(Third Am. Compl. ¶ 46.)  These claims are nearly identical to those marketing defect claims which the court previously dismissed.  (<u>See</u> Dkt. # 11 ¶¶ 52, 54; Dkt. # 63 at 13–15.)  As previously explained, a marketing defect arises where the actual failure to warn causes a product to be unreasonably dangerous; a marketing defect does <u>not</u> arise where manufacturer fails to warn of the unreasonable danger caused by alleged design defects.  <u>See</u> <u>Ethicon Endo-Surgery, Inc. v. Meyer</u>, 249 S.W.3d 513 (Tex. App. 2007); <u>Timoschuk v. Daimler Trucks N. Am., LLC</u>, No. SA–12–CV–816–XR, 2014 WL 2592254, at *3 (W.D. Tex. June 10, 2014).

Here, despite the Court's previous explanation of the essential elements of a marketing defect claim, Plaintiffs continue to attempt to bring a cause of action for marketing defect based upon GM's failure to warn of alleged design defects.  This is insufficient to state a cause of action, and these claims are **DISMISSED**.

2.  <u>Marketing Defect Claim Regarding Towing</u>

Plaintiffs also assert a marketing defect claim against GM for failure to "warn prospective users of the increased danger of rollover in the use of towing equipment."  (Third Am. Compl. ¶ 49.)  Plaintiffs allege that the vehicle had a "high center of gravity, causing a rollover propensity . . . when towing a large cargo trailer," and that GM was aware of "rollovers involving the use of towing equipment," but that it nonetheless failed to include a specific warning in the "instruction manual with regard to towing."  (<u>Id.</u> ¶ 48–49.)

Based upon Plaintiffs' allegations, it is possible to infer (1) using the vehicle to tow a trailer presents a risk of harm – specifically the risk of a rollover collision – due to the vehicle's high center of gravity; (2) GM should have anticipated that vehicle users may attempt to tow cargo trailers; (3) that GM failed to provide an adequate warning regarding the use of cargo trailers with the vehicle when it marketed the vehicle; (4) that the absence of the warning rendered the vehicle unreasonably dangerous, because drivers such as Mendoza would not have towed a similar cargo trailer had they been aware of the risk; and (5) this failure to warn was a cause of Plaintiffs' damages – if GM had properly warned Mendoza of the allegedly increased risk of rollover associated with towing a cargo trailer, Mendoza would not have used the vehicle to tow a trailer, and would not have had the accident.  At this stage, Plaintiffs have pled sufficient information to state a

claim for marketing defect with regards to GM's alleged failure to warn about increased risks associated with using the vehicle to tow cargo trailers. Accordingly, GM's motion to dismiss is **DENIED** only as to this specific marketing defect claim.

## II. <u>U-Haul's Motion to Dismiss</u>

U-Haul argues that Plaintiffs' claim for breach of express warranty must be dismissed, because this Court previously dismissed the claim with prejudice.[5] (Dkt. # 71 at 4–5.)  Further, they argue that Plaintiffs' have failed to state a marketing defect claim.  (Dkt. # 71 at 5–7.)  Finally, U-Haul argues that Plaintiffs' claim for breach of implied warranty of merchantability should be dismissed, though it previously survived a motion to dismiss, because Plaintiffs have added Kelton's—the business which allegedly rented the trailer to Mendoza—as a defendant in the case.  (Dkt. # 71 at 7–8.)

### A. <u>Marketing Defect Claims</u>

Plaintiffs' Third Amended Complaint alleges that U-Haul is liable for a marketing defect for failure to warn potential users of the alleged danger of

---

[5] Plaintiffs' response states that they "did not even intend to plead in their Third Amended Complaint; to the extent that Plaintiffs inadvertently pled a claim for breach of express warranty in their Third Amended Complaint, such claim is hereby withdrawn."  (Dkt. # 81 at 5–6.)  While Plaintiffs' counsel states the claim was "inadvertent," this inadvertence has cost the Court, counsel for U-Haul, and even Plaintiffs' own counsel unnecessary time and resources.

towing a trailer whose weight is approximately equal to the weight of the towing vehicle.[6]  (Third Am. Compl. ¶¶ 67–74).  Defendants argue that this claim should be dismissed, because the claim also appears to allege marketing defects for failure to warn regarding the trailer's alleged design defects.  (Dkt. # 71 at 5–7.)

Plaintiffs state that (1) an increased rollover risk is associated with towing a 12-foot trailer using an SUV-type vehicle, where the trailer and vehicle have an approximate 1:1 weight ratio (3d Am. Compl. ¶ 70, 72); (2) U-Haul should have reasonably anticipated that risks associated with towing this type of trailer-vehicle combination (id. ¶ 70); (3) U-Haul did not give adequate warning regarding the vehicle-trailer combination (id. ¶ 68, 73); (4) this warning caused the trailer-vehicle combination to be unreasonably dangerous to Mendoza, who may not have been aware of the rollover risks associated with the trailer-vehicle combination (id. ¶ 71, 74); and (5) this alleged failure to warn may have contributed to the accident, by allegedly causing Mendoza to rent an inappropriate trailer for her vehicle (id. ¶ 74).

Plaintiffs' Third Amended Complaint states a claim for marketing defect insofar as the alleged failure to warn regarding certain vehicle-trailer

---

[6] While this is somewhat less clear in the Third Amended Complaint, Plaintiffs' response clarifies that "the U-Haul trailer at issue is much safer to tow behind a box truck or other vehicle with a 2:1 or greater ratio of the towing vehicle's weight to the trailer's weight than it is to tow behind a GMC Envoy with an approximately 1:1 ratio of the GMC Envoy's weight to the trailer's weight."  (Dkt. # 81 at 11–12.)

combinations was unnecessarily dangerous.  U-Haul's motion to dismiss is

**DENIED** as to this claim.  To the extent Plaintiffs also attempt to state a marketing

defect claim regarding U-Haul's failure to warn about design defects, these claims

are **DISMISSED**.

      B. <u>Breach of Implied Warranty of Merchantability</u>

      While Plaintiffs' claim for breach of implied warranty of

merchantability previously survived U-Haul's motion to dismiss (Dkt. # 63 at 29–

30), U-Haul argues that the claim should now be dismissed.  (Dkt. # 71 at 7–8;

Dkt. # 84 at 3–5.)  U-Haul argues that Plaintiffs' Third Amended Complaint fails

to state a claim against it for breach of implied warranty of merchantability,

because the complaint alleges that Kelton's, rather than U-Haul, rented the trailer

(<u>id.</u> at 7–8).[7]

---

[7] U-Haul also appears to argue that the implied warranty of merchantability in a
lease transaction is fully governed by § 2A.212 of the Texas Business and
Commerce Code, rather than § 2.314 (Dkt. # 71 at 7, n. 2), precluding Plaintiff
from asserting a claim for breach of implied warranty of merchantability here.  U-
Haul is correct that in most circumstances, a lease contract carries an implied
warranty of merchantability.  <u>See</u> Tex. Bus. & Comm. Code § 2A.212(a) ("Except
in a finance lease, a warranty that the goods will be merchantable is implied in a
lease contract if the lessor is a merchant with respect to goods of that kind.").
However, U-Haul interprets the statute too narrowly; § 2A.212(a) does not
preclude Plaintiffs from stating a claim for breach of implied warranty of
merchantability here, where a lease transaction occurred.  <u>See</u> <u>Oldham v.</u>
<u>Thompson/Ctr. Arms. Co., Inc.</u>, No. H–12–2432, 2013 WL 1576340, at *8 (S.D.
Tex. Apr. 11, 2013) (citing <u>Polaris Indus. v. McDonald</u>, 119 S.W.3d 331, 336
(Tex. App. 2003)).  Texas courts apply the same pleading standard for breach of

A plaintiff successfully states a cause of action for breach of implied warranty of merchantability by alleging: "1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury." Equistar Chem., L.P. v. Dresser-Rand Co., 240 S.W.3d 864, 867 (Tex. 2007) (emphasis added) (quoting Polaris Indus. v. McDonald, 119 S.W.3d 331, 336 (Tex. App. 2003)). While Plaintiffs do assert that the trailer was rented from Kelton's, they also assert that Kelton's is a franchise dealer for U-Haul. (3d Am. Compl. ¶ 61.) Whether liability for a potential breach of implied warranty of merchantability falls upon U-Haul or Kelton's is an issue of agency; at the motion to dismiss stage, Plaintiffs need not have determined the party upon whom liability ultimately falls. See O'Bryant v. Century 21 S. Cent. States, Inc., 899 S.W.2d 270, 271–72 (Tex. App. 1995). Accordingly, there is no need to reconsider the prior order regarding the motion to dismiss, and U-Haul's Motion to Dismiss this claim is **DENIED** (Dkt. # 71.)

## CONCLUSION

Plaintiffs attached a proposed Fourth Amended Complaint to each Response to the Motions to Dismiss. (Dkt. # 79, Ex. 1; Dkt. # 81, Ex. 1.) As the Court explained during the September 29, 2015 hearing on the previous motions to

---

implied warranty of merchantability to both lease and purchase transactions. See Helen of Troy, L.P. v. Zotos Corp., 511 F. Supp. 2d 703, 724 (W.D. Tex. 2006).

dismiss, additional leave to amend the complaint will not be granted.  (Dkt. # 70–1

at 26 ("I'm putting you on clear and unmistakable notice that there is going to be

no fourth amended complaint here . . . there comes a point where the Court has to

say, enough is enough").); see Matter of Southmark Corp., 88 F.3d 311, 314–15

(5th Cir. 1996) ("In deciding whether to grant [leave to amend], the court may

consider such factors as undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party, and futility of amendment."); see also U.S.

ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 387 (5th Cir.

2003).

        The Court provided Plaintiffs a very clear outline of the applicable

law in its previous order on the parties' motions to dismiss.  At this point, any

failures to properly plead a claim amount to repeated failure to cure deficiencies.

See Matter of Southmark, 88 F.3d at 314–15.  These deficient claims, which

Plaintiffs have had the opportunity to properly plead, are appropriately dismissed

with prejudice at this stage.  See Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d

170, 177 (5th Cir. 2016) (affirming dismissal of counterclaims with prejudice when

counterclaimant waited fifteen months to remedy the deficiencies in its pleadings);

Hermann Holdings Ltd. v. Lucent Tech. Inc., 302 F.3d 552, 566 (5th Cir. 2002)

(finding plaintiffs need not be afforded a further opportunity to amend their complaint where they had been given two opportunities to amend).

Accordingly, the Court **DISMISSES** the following claims against GM **WITH PREJUDICE**: (1) design defect claims regarding rollover protection, the restraint system, crush protection, ejection protection from doors, and seating; and (2) general marketing defect claims.  The Court **DISMISSES** the following claims against U-Haul **WITH PREJUDICE**: (1) general marketing defect claims; and (2) claim for breach of express warranty of merchantability, insofar as it was alleged.

Against GM, Plaintiffs' design defect claims regarding the window system and marketing defect claim regarding towing remain; against U-Haul, Plaintiffs' marketing defect claim regarding vehicle-trailer combinations, as well as the claim for breach of implied warranty of merchantability remain.

For the reasons stated above, GM's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** (Dkt. # 70).  U-Haul's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** (Dkt. # 71.)

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, June 22, 2016.

_____

David Alan Ezra
Senior United States Distict Judge